# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN HODGES,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDRE MATEVOUSIAN, et al.,<br><br>    Defendants. | Case No. 1:18-cv-00790-AWI-EPG-PC<br><br>FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS IN PART<br><br>(ECF No. 17)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Melvin Hodges ("Plaintiff") is a federal prisoner proceeding *pro se* with this civil rights action pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). Before the Court is Defendants' motion to dismiss the Complaint. For the reasons described below, the undersigned recommends that the motion to dismiss be granted in part, Plaintiff's claim for damages under Bivens for unconstitutional conditions of confinement be dismissed with prejudice, and this case proceed on Plaintiff's request for injunctive relief.

**I.     BACKGROUND**

Plaintiff filed the Complaint commencing this action on June 8, 2018. (ECF No. 1). On November 28, 2018, the Court screened the Complaint and found it appropriate for service of process on Plaintiff's claims for unconstitutional conditions of confinement against Defendants Matevousian, Cassity, and Hurte (collectively "Defendants"). (ECF No. 6).

On April 12, 2019, Defendants filed the instant motion to dismiss the Complaint on the grounds that the Complaint fails to state a claim under the Supreme Court's ruling in Ziglar v.

1

Abbasi, 137 S. Ct. 1843 (2017), and that special factors weigh against implying a Bivens remedy in this new context. (ECF No. 17). Plaintiff filed an opposition and supplemental opposition, and Defendants filed a reply. (ECF Nos. 19, 20, 23).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff is an inmate at the Federal Prison Camp in Atwater, California ("FPC"). Plaintiff has been at FPC since May 26, 2015. The Complaint alleges that until approximately September 2017, the lights in Plaintiff's unit would be turned off upon the completion of the 9:30 p.m. stand-up count. They would be turned back on at 5:45 a.m. the following day. However, there was an abrupt change that occurred with no prior notice given to the inmates. Instead of the lights going off completely after the 9:30 p.m. count, they were now being left on.

Plaintiff alleges that to say this change occurred because they were deemed "emergency lights" would be disingenuous at best as the exit signs in each of the four corners of the unit are clearly illuminated. The lights are very bright and make a distinct humming sound. As a result of this change, Plaintiff is suffering from sleep deprivation.

Plaintiff immediately started the administrative remedy procedure and was promptly told by the camp administrator that this change was for the "*safety of staff and inmates*." Plaintiff contends that Defendants did not perform their due diligence and adequately investigate his claim. For example, they never came to FPC except during daylight hours to check on the impact of the lighting at night, and there are twenty-eight windows surrounding the dormitory that let a considerable amount of light in during the day. Additionally, their responses to Plaintiff's administrative remedies never mentioned Plaintiff's sleep deprivation.

Plaintiff alleges that there was no penal interest in suddenly leaving the lights on after the 9:30 p.m. count, nor was there an incident that upset the balance of the prison with staff or inmates that would justify such a change. The change was made without regard for the health effects that Plaintiff has experienced.

Plaintiff alleges that "[a]fter careful examination of the facts" the staff members who are directly responsible for the change are: Warden Andre Matevousian, who allowed the violation of Plaintiff's Eighth Amendment rights to occur; Captain Hurte, who failed to perform his due

diligence and allowed the change to occur; and Camp Administrator Cassity, who responded to Plaintiff's administrative grievance by providing an unsubstantiated claim about the "*safety of staff and inmates*," when for years there had been no issues threatening either staff or inmates.

In his prayer for relief, Petitioner requests: (1) the camp nighttime lighting to be brought to "acceptable standards"; (2) transfer to the Federal Prison Camp in Mendota, California; and (3) $1,000,000 in damages.

### III.     LEGAL STANDARDS

####     A.  Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

3

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45–46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

**B. Bivens**

A Bivens action, the "federal analog to suits brought against state officials" under 42 U.S.C. § 1983, Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006), is a judicially implied cause of action "for damages against federal officers alleged to have violated a plaintiff's constitutional rights," Lanuza v. Love, 899 F.3d 1019, 1021 (9th Cir. 2018). See Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017).

In Bivens v. Six Unknown Federal Narcotics Agents, the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages. 403 U.S. at 389. The Supreme Court acknowledged that "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation," but noted that there was "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents" and that the "present case involves no special factors counselling hesitation in the absence of affirmative action by Congress." Id. at 396, 397.

| | |
|---|---|
| 1 | Thereafter, in Davis v. Passman, 442 U.S. 228 (1979), the Supreme Court held that the plaintiff—an administrative assistant to a United States congressman who was fired because she was a woman—could sue for damages for a violation of the Due Process Clause of the Fifth Amendment. And in Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court held that the estate of a prisoner could sue federal prison officials for damages for failure to adequately treat the prisoner's asthma in violation of the Eighth Amendment. |

Thereafter, in Davis v. Passman, 442 U.S. 228 (1979), the Supreme Court held that the plaintiff—an administrative assistant to a United States congressman who was fired because she was a woman—could sue for damages for a violation of the Due Process Clause of the Fifth Amendment. And in Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court held that the estate of a prisoner could sue federal prison officials for damages for failure to adequately treat the prisoner's asthma in violation of the Eighth Amendment.

"These three cases—Bivens, Davis, and Carlson—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." Abbasi, 137 S. Ct. at 1855. And since Bivens, Davis, and Carlson were decided, there has been a "notable change in the Court's approach to recognizing implied causes of action" such that "expanding the Bivens remedy is now a 'disfavored' judicial activity," as evidenced by the Supreme Court "consistently refus[ing] to extend Bivens to any new context or new category of defendants" for the past thirty years. Abbasi, 137 S. Ct. at 1857 (citations omitted). The Supreme Court "has urged 'caution' before 'extending Bivens remedies into any new context'" and precedents now make clear that a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Id. (citations omitted).

The Supreme Court has articulated the following two-part test for determining whether a Bivens remedy should be extended: "First, courts must determine whether the plaintiff is seeking a Bivens remedy in a new context. If the answer to this question is 'no,' then no further analysis is required. If the answer is 'yes,' then the court must determine whether 'special factors counsel[ ] hesitation.'" Lanuza, 899 F.3d at 1023 (citing Abbasi, 137 S. Ct. at 1859–60).

**IV.    DISCUSSION**

Defendants assert that the Complaint should be dismissed because "the Supreme Court has not approved an Eighth Amendment *Bivens* claim for all night lighting at a prison." (ECF No. 17 at 4).[1] Defendants argue that Plaintiff's claim attempts to extend Bivens to a new context but that special factors counsel against extending Bivens to this case. (Id. at 6).

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

5

**A. New Context**

A case presents a new context if it "is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." Abbasi, 137 S. Ct. at 1859. The Supreme Court has declined "to create an exhaustive list of differences that are meaningful enough to make a given context a new one," id. at 1859–60, but provided the following instructive examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Abbasi, 137 S. Ct. at 1860.

In Abbasi, the Supreme Court found that "claims challeng[ing] the confinement conditions imposed on illegal aliens pursuant to a high-level executive policy created in the wake of a major terrorist attack on American soil" constituted a new Bivens context because they bore "little resemblance to the three Bivens claims the [Supreme] Court ha[d] approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." 137 S. Ct. at 1860.

Abbasi also found that the claim alleging that the warden violated the Fifth Amendment by allowing prison guards to abuse detainees constituted a new Bivens context. Although recognizing that this claim had "significant parallels" to Carlson, the Supreme Court found that the different constitutional right at issue, the less developed judicial guidance available to the warden, and the possibility of alternative remedies required the lower court to perform a special factors analysis to determine whether the Bivens remedy should be extended.

The instant case can be distinguished from the conditions of confinement claims in Abbasi. Plaintiff's continuous lighting claim did not result from a "high-level executive policy"[2]

---

[2] The defendants in Abbasi included the former Attorney General, the former Director of the Federal Bureau of Investigation, and the former Immigration and Naturalization Service Commissioner. Abbasi, 137 S. Ct. at 1853.

and said policy was not "created in the wake of a major terrorist attack on American soil." Abbasi, 137 S. Ct. at 1860. Additionally, Plaintiff's claim is more similar to Carlson than the claim against the warden in Abbasi. Plaintiff's claim involves the same constitutional right as Carlson. And although not as ubiquitous as the standard for claims alleging failure to provide medical treatment to a prisoner, the Ninth Circuit has squarely held that continuous lighting is unconstitutional when the practice occurs over a prolonged period of time, causes sleep deprivation, and has no legitimate penological justification. Keenan v. Hall, 83 F.3d 1083, 1090–91 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998). See also Chappell v. Mandeville, 706 F.3d 1052, 1057 (9th Cir. 2013).

However, the undersigned recognizes that this Court has held that Eighth Amendment conditions of confinement claims present a new Bivens context because while arising under the cruel and unusual punishment clause, Carlson concerned inadequate medical care. See Thomas v. Matevousian, No. 1:17-cv-01592-AWI-GSA, 2019 WL 266323, at *1–2 (E.D. Cal. Jan. 18, 2019) (declining to adopt magistrate judge's finding that conditions of confinement claim[3] was similar to Eighth Amendment claim raised in Carlson); Mercer v. Matevousian, No. 1:18-cv-00265-DAD-BAM, 2018 WL 4859312, at *3 (E.D. Cal. Oct 5, 2018) ("Plaintiff's allegations are properly characterized as a conditions of confinement claim,[4] which differs from [the Carlson] claim for failure to provide medical care or treatment."). Further, the Ninth Circuit in an unpublished decision held that an "Eighth Amendment claim regarding unsanitary cell conditions presents a new Bivens context because [the petition] does not allege a failure to treat a serious medical condition, which was the issue in Carlson . . . [and] resembles the conditions of the confinement claim the Supreme Court rejected in Abbasi." Schwarz v. Meinberg, 761 F. App'x 732, 734 (9th Cir.), reh'g denied, Nos. 17-55298, 17-56216, 2019 U.S. App. LEXIS 12909 (9th Cir. Apr. 29, 2019), petition for cert. filed, No. 19-5776 (U.S. July 24, 2019).

---

[3] "Plaintiff asserted in his complaint that he was denied basic supplies such as soap, toothpaste, deodorant, razors, shampoo, writing paper, and envelopes, for more than forty days[.]" Thomas, 2019 WL 266323, at *1.
[4] Plaintiff, who is "an amputee above the knee," alleged that on several occasions he "fell in the shower from the soap and water because there was no way to hold himself up with no hand rails or sitting positions provided in the showers." Mercer, 2018 WL 4859312, at *2.

7

Even if a case has "significant parallels" to previous Bivens cases decided by the Supreme Court and would only be a "modest extension," it would still arise in a new context. Abbasi, 137 S. Ct. at 1864. "Given [the Supreme] Court's expressed caution about extending the Bivens remedy . . . the new-context inquiry is easily satisfied." Id. at 1865. Based on the foregoing, the Court finds that Plaintiff is seeking a Bivens remedy in a new context. Therefore, the undersigned will determine whether special factors counsel hesitation in expanding the Bivens remedy in this case.

**B. Special Factors**

Although the Supreme Court has not defined the phrase "special factors counselling hesitation," it has instructed that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed" and that "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." Abbasi, 137 S. Ct. at 1857–58.

In Abbasi, the Supreme Court appeared to suggest that the Prison Litigation Reform Act of 1995 ("PLRA") is a factor counseling hesitation. Although "it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs" some fifteen years after Carlson was decided, the PLRA "itself does not provide for a standalone damages remedy against federal jailers." Abbasi, 137 S. Ct. at 1865. The Supreme Court reasoned, "It could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment," and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id.

The Supreme Court also indicated that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action" because "if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" Abbasi, 137 S.

8

Ct. at 1858 (alterations in original) (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007)). Abbasi stated that the availability of alternative remedies, such as "a writ of habeas corpus; an injunction requiring the warden to bring his prison into compliance with the regulations . . . ; or some other form of equitable relief" "might discourage a court from authorizing a Bivens remedy." 137 S. Ct. at 1865.

Here, Plaintiff had alternative remedies for the alleged violation of his Eighth Amendment rights. First, Plaintiff had access to the Federal Bureau of Prisons' ("BOP") Administrative Remedy Program, the purpose of which "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement," 28 C.F.R. § 542.10(a), and in fact has already availed himself of that process. (ECF No. 19-1 at 3–13). See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001) (noting that one of the plaintiff's available alternative remedies was the "remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program"); Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018) (finding the plaintiff "had alternative means for relief," including "a remedy to 'to seek formal review of an issue relating to *any aspect* of his . . . own confinement' under the Administrative Remedy Program). The fact that Plaintiff was ultimately unsuccessful in obtaining the relief he sought through the BOP's administrative grievance process "does not mean that he did not have access to alternative or meaningful remedies." Vega, 881 F.3d at 1155.

Second, Plaintiff may seek injunctive relief that would prevent future unconstitutional harm. Here, in addition to damages, Plaintiff is seeking to "bring camp nighttime lighting to acceptable standards." (ECF No. 1 at 3). "[U]nlike the Bivens remedy, which [the Supreme Court has] never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." Malesko, 534 U.S. at 74. See also Abbasi, 137 S. Ct. at 1862–63 (noting that unlike Bivens, "in which 'it is damages or nothing,'" plaintiffs may seek injunctive relief for "large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners"); Zavala v. Rios, 721 F. App'x 720, 721–22 (9th Cir.) ("Under Ziglar [v. Abbasi], an extension of Bivens is not available here because . . . Zavala may seek injunctive and declaratory relief. For example,

relief may be available under 5 U.S.C. § 702, 28 U.S.C. § 1361, or 28 U.S.C. § 1331."), cert. denied, 139 S. Ct. 464 (2018).

"[A]n alternative remedy need not be 'perfectly congruent' with Bivens or 'perfectly comprehensive[.]'" Rodriguez v. Swartz, 899 F.3d 719, 739 (9th Cir. 2018) (citations and footnotes omitted). "So long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." Malesko, 534 U.S. at 69. Accordingly, the Court finds that special factors counsel against extending a Bivens remedy to Plaintiff's Eighth Amendment conditions of confinement claim.

## V. CONCLUSION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Defendants' motion to dismiss (ECF No. 17) be GRANTED IN PART;
2. Plaintiff's claim for damages under Bivens for unconstitutional conditions of confinement against Defendants Matevousian, Cassity, and Hurte be DISMISSED with prejudice; and
3. This case proceed on Plaintiff's request for injunctive relief.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **THIRTY (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

Any reply to the objections shall be served and filed within **FOURTEEN (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 28, 2019**  /s/ Erin P. Grosjean
UNITED STATES MAGISTRATE JUDGE